566 A.2d 381

**WILKINSBURG–PENN JOINT WATER AUTHORITY, Appellant,**

**v.**

**UTILITY WORKERS UNION OF AMERICA, LOCAL 191, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Oct. 2, 1989.

Decided Nov. 22, 1989.

Stephen A. Zappala, Jr., Dattilo, Barry, Fasulo & Cambest, Pittsburgh, for appellant.

John Elash, for appellee.

Before CRAIG and DOYLE, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Before us for consideration is an appeal by the Wilkinsburg–Penn Joint Water Authority (Authority) from an order of the Court of Common Pleas of Allegheny County which dismissed the Authority's petition to vacate and/or modify an arbitrator's award, and granted a petition to confirm the award filed by the Utility Workers Union of America, Local 191 (Union). We affirm.

This case had its genesis in a grievance filed by the Union pursuant to the Collective Bargaining Agreement (Agree-

ment) between the parties.[1]  The facts are as follows.

For a period of approximately twenty-five years, the Authority scheduled meter reader-repairmen (repairmen) to work all weekend shifts in addition to their regular Monday through Friday shifts.  The repairmen read meters during the week and repaired them on the weekend shifts; they also performed additional duties which included answering telephone service requests.[2]

The Authority provided no supervision on the weekend shifts, and it asserted that it began to detect abusive absenteeism by the repairmen on those shifts which resulted in increased overtime and decreased production.  The Authority also asserted that due to technological changes in the meters over the twenty-five year period, it was now easier simply to replace totally, rather than repair, all of the meters.[3]

Accordingly, at the regularly scheduled meeting between the Union's grievance committee and the Authority's General Manager held in February 1987, the Authority indicated its intention to effectuate a schedule change involving the repairmen.  On September 4, 1987, the Authority notified the Union by memorandum of the following:

> In accordance with Article Four, Section Six of the current collective bargaining agreement, notice is hereby given that effective with the first Monday in January 1988 (January 4, 1988), scheduling changes will occur which shall involve scheduling of the current three (3) weekend Meter Reader–Repairman shifts to the Monday through Friday daylight schedule.  These changes will effect the Service Department shift bids done during

1.  The relationship between the parties in this case is governed by the Public Employe Relations Act (Act 195), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

2.  Although not in the record, the Court was advised at oral argument that because it is more cost effective to replace meters rather than repair them, the repairmen spent the majority of their time on the weekend just answering the telephone service calls.

3.  See *supra* n. 2.

October of each year, and extra notice is given so that operational personnel may adequately plan.

The notice had the effect that repairmen would no longer be assigned weekend shifts. Whatever additional duties the repairmen had performed, including answering telephones, would now be performed by a telephone answering service, supervisory personnel and guards, all of whom were outside of the bargaining unit.

The Union filed a grievance in response to the proposed changes, which in fact became effective on January 4, 1988. The parties reached an impasse in the grievance process and agreed to submit the issue to arbitration. The arbitrator, following a hearing, made the following relevant findings:

> It must be made clear at the outset that the Authority's ceasing to schedule three Meter Reader–Repairmen, one on each of the six weekend shifts, does not appear to have violated any provision of the Agreement. The same must be said of removal of the Janitor and Truck Washer on the last Friday and first Monday shifts.

> The reason for the action was that the Authority thought it obvious that Meter Reader–Repairmen and other jobs no longer were needed on weekends. That is a decision for Management to make. Section 6 of Article Four says in so many words that the Authority may change schedules twice a year. *It acted under that authority, and neither its doing that or [sic] the way in which it was done violated any provision of the Agreement.*

> The Union at the hearing really did not object to that, but it asserted that, after the Authority had removed the Meter Reader–Repairmen from weekend shifts and the Janitor and Truck Washer and as a direct and necessary result of those removals, there were several bargaining unit duties that still had to be performed, and that they now were being done by nonbargaining unit personnel.

The main point that emerges clearly from the evidence of both parties is that Meter Reader–Repairmen always were assigned on each of the six weekend shifts.

It is plain also that, whatever the reason for such scheduling, its primary purpose was not to have Meter Reader–Repairmen answer telephones, read and change charts, dispatch Inspectors or Call Foremen, locate or measure places on maps, or secure buildings and gates. The Meter Reader–Repairmen were assigned on weekends so that they could repair meters then, since incumbents of that job ordinarily spent their weekday shifts reading meters.

Equally clear on the testimony from both parties, however, is the conclusion that, although Meter Reader–Repairmen were not assigned on weekends just to perform the above duties, they surely did perform them, along with their main function of repairing meters, as did Janitors and Truck Washers on their shifts. Thus, that work obviously is bargaining unit work, because bargaining unit employees regularly performed it.

. . . .

The remaining segment of this dispute relates to the contracted, telephone-answering service taking and making telephone calls on weekends, in cases of calls of trouble by the public or from the field and then dispatching Inspectors or the Call Foreman, or both, to the site.

This clearly was and continues to be bargaining unit work, and it may not be assigned to nonbargaining unit personnel. That it does not take a great deal of time is no answer. It is a vitally important duty, essential to adequate performance of the Authority's service, and it surely is not such a trifle as to be characterized as de minimis. Nor is that conclusion changed by the fact that some or many of these telephone calls are of an emergent or a nearly emergent nature. Emergencies that occur regularly and with some frequency must be anticipated and their solution planned. That plan always involved bargaining unit employees' handling of these telephone

calls, and that thus became bargaining unit work that may not be assigned to outsiders.

. . . .

Accordingly, the grievance will be sustained, but only to the extent of holding that the Authority's having persons outside the bargaining unit perform any of the telephone-answering or calling duties, violates the Agreement, especially Article One, Section 3 (Recognition and Union Security). (Emphasis added.)

■ On appeal to this Court, the Authority presents three issues for review, and first argues that the arbitrator's award did not draw its "essence" from the Agreement. Our scope of review of the arbitrator's decision in this case is expressed in terms of the "essence test." *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA )*, 473 Pa. 576, 375 A.2d 1267 (1977). Under the essence test we are confined to a determination of whether the arbitrator's decision could rationally be derived from the essence of the Agreement. *Pennsylvania Liquor Control Board v. Independent State Stores Union*, 520 Pa. 266, 553 A.2d 948 (1989). Further, in *County of Centre v. Musser*, 519 Pa. 380, 548 A.2d 1194 (1988), our Supreme Court stated "[u]nder the 'essence' test, ... an arbitrator's award is to be respected by the courts if it represents a reasonable interpretation of the labor agreement between the parties." *Id.*, 519 Pa. at 390, 548 A.2d at 1198.

The crux of the Authority's position is that once the arbitrator found that the Authority's ceasing to schedule repairmen on weekend shifts did not violate the Agreement, he should have gone no further. It argues that the arbitrator's finding that answering telephones was bargaining unit work which must be performed by bargaining unit employees went beyond the scope of the Agreement and thus was not a reasonable interpretation of that Agreement.

■ We disagree. It is clear from his total opinion that the arbitrator did no more than examine the previous twen-

ty-five years' work practice in the repairmen's bargaining unit, and concluded that answering the telephones was bargaining unit work. In *County of Allegheny v. Allegheny County Prison Employees Independent Union*, 476 Pa. 27, 381 A.2d 849 (1977), which involved an Act 195 arbitration, our Supreme Court recognized that there are four situations in which evidence of past practice may be used to ascertain parties' intentions. These four situations are:

> (1) to clarify ambiguous language; (2) to implement contract language which sets forth only a general rule; (3) to modify or amend apparently unambiguous language which has arguably been waived by the parties; and (4) *to create or prove a separate, enforceable condition of employment which cannot be derived from the express language of the agreement.*

*Id.*, 476 Pa. at 34, 381 A.2d at 852 (emphasis added).

Here, evidence of past practice was used to demonstrate an employment condition which could not be derived from the express language of the Agreement. *See Police Officers of the Borough of Hatboro v. Borough of Hatboro*, 126 Pa.Commonwealth Ct. 247, 559 A.2d 113 (1989). As such, we cannot say that the arbitrator's finding that the work was bargaining unit work was unreasonable or beyond the scope of the agreement, or that such a finding is unsupported by the record.

The Authority's second contention is that the arbitrator's finding that it acted improperly in assigning bargaining unit work to nonbargaining unit personnel amounted to a finding that it had engaged in an unfair labor practice, and that jurisdiction over such matters lies not with the arbitrator but with the Pennsylvania Labor Relations Board. In support of this theory, the Authority attempts to assert that the Union's charges, if substantiated, would constitute a refusal by the Authority to bargain collectively and a refusal to meet and discuss, both of which would fall within the jurisdiction of the Labor Relations Board. In our view the Authority misapprehends the Union's position. There is no complaint of a failure to bargain collectively or to meet and

discuss, nor a charge of miscertification. The Union's allegation is that bargaining unit duties were assigned to nonmembers of the bargaining unit. We have already upheld the arbitrator's finding on this point as having derived its essence from the Agreement. Therefore, this second argument is without merit.

■ The Authority's final argument is that the proceedings before the arbitrator were "irregular," in that it was denied a hearing before the Labor Relations Board on the "unfair labor practice" issue. Based on our discussion *supra,* it is clear that there was no issue of an unfair labor practice.[4] Further, because the arbitrator found that answering telephones was a bargaining unit duty, he had jurisdiction under the Agreement to sustain the grievance to that extent. Therefore, the arbitration proceedings were not "irregular."

Accordingly, the order of the common pleas court which dismissed the Authority's petition to vacate or modify the arbitrator's award and which granted the Union's petition to sustain the award is affirmed.

BARRY, J., did not participate in the decision in this case.

## ORDER

NOW, November 22, 1989, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

---

**4.** We reject the Authority's argument that the issue here was within the jurisdiction of the Labor Relations Board pursuant to Sections 701 and 702 of Act 195, 43 P.S. §§ 1101.701 and 1101.702, which pertain respectively to matters which are and are not subject to bargaining. What occurred here was a violation of a long-standing practice which came within the provisions of the Agreement under *County of Allegheny* and *Borough of Hatboro.*