639 A.2d 968

**PENNSYLVANIA TURNPIKE COMMISSION, Petitioner**

**v.**

**TEAMSTERS LOCAL UNION NO. 250, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1993.

Decided March 24, 1994.

Michael J. Reilly, for petitioner.

Ernest B. Orsatti, for respondent.

Before SMITH and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

The Pennsylvania Turnpike Commission (Commission) petitions for review of the opinion and award of an arbitrator sustaining the grievance filed by Commission maintenance employees to protest the Commission's use of an outside contractor. The issues raised for review are whether the arbitrator's award draws its essence from the collective bargaining agreement (Agreement) between the Commission and the maintenance employees' union, Teamsters Local Union No. 250 (Union); and whether the remedy fashioned by the arbitrator exceeded his authority under the Agreement.

I

The Commission operates a toll road system within Pennsylvania and its employees at the Harrison City maintenance shed are responsible for maintaining an approximately twenty-five-mile-long section of turnpike. The Commission awarded a contract to an outside contractor, I.A. Construction, for a major surface-overlay project on a nine-mile section of the turnpike that began in April 1991 and was to be completed in September 1991. The maintenance employees filed a grievance in May 1991 claiming that the Commission improperly contracted out work involved in the project including brushing and cleaning rock fence, sewer cleaning, and curbing and drainage. The grievance stated that such duties should have been assigned to maintenance shed personnel as had been done in the past. The Union did not protest the failure to assign the work involved in the surface overlay itself.

The Commission denied the grievance, claiming that the cleaning and brushing of the rock fence is identified as a line item of work to be completed by the contractor; a large

portion of the contract is beyond the scope of the maintenance shed because of the magnitude of work and required expertise and equipment; although line items within the contract individually could be construed as a maintenance shed responsibility, they were an integral part of the overall contract project; and there had been no loss of employment by any maintenance shed employee.

The Union thereafter amended the grievance to include removal and replacement of guardrails, sewer and drainage clearing, and construction of curbing. When the parties were unable to resolve the grievance, it was submitted to binding arbitration pursuant to the Agreement as required by the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301. At hearing before the arbitrator, a union steward at the maintenance shed testified on behalf of the Union that the bargaining unit employees do general maintenance work including the work in question; brushing and cleaning involved removing new growth and brush along drainage ditches and guardrails and removing trees; the maintenance shed employees have the necessary skills and equipment to perform the work; and that brushing and cleaning had nothing to do with the overlay job. The witness presented documentary evidence to demonstrate that the Commission had previously assigned maintenance employees to perform this work.[1]

The Commission did not dispute that its maintenance employees were able to perform the work; however, it took the position that there was a well-established practice of subcontracting work identical to that in dispute. A Commission official testified that maintenance work is sometimes performed by its maintenance employees, while at other times it

1. The Union also presented the testimony of the current foreman of the maintenance shed, who testified that he could recall only one instance in the past where outside contractors had received contracts to brush and clean the roadside, and in that situation, there was some correlation to the main body of work being contracted out. A former foreman testified that he was not aware of any subcontracting of brushing and cleaning work as a part of road construction and that all of this type of work was done by the bargaining unit employees.

is included as a line item in a construction contract. He stated that it was the Commission's practice to include work that the maintenance employees were capable of doing in a construction contract where the Commission felt it was consistent with its operational needs. The Commission attempted to show this practice by presenting prior construction contracts that included cleaning and brushing as part of the job.

On rebuttal, the Union's shop steward testified that he reviewed the Commission's exhibits and concluded that the contractors in those instances had to brush and clean before they could do the main body of work, a situation in contrast to the present one where brushing and cleaning was not necessary to complete the overlay project. In the present contract, the brush did not interfere with resurfacing, the guardrail did not have to be moved, and a bargaining unit crew was in the area and could have done the work.

After hearing, the arbitrator sustained the grievance concerning the brushing and cleaning work and dismissed all other complaints. The arbitrator held that under Article XVII, Section 4, of the Agreement, the Commission may not subcontract work normally done by the bargaining unit unless one of two exceptions applies. The first exception is where the maintenance employees are incapable of performing the work or where the Commission lacks the necessary personnel and/or equipment with which to perform the work. The evidence established that the employees are capable of performing the work and the required personnel and equipment were available. The second exception is where the Commission has a past practice or tradition of subcontracting such work. Noting that the Commission's exhibits showed that brushing and cleaning was subcontracted only when it was considered inextricably tied to the main body of the construction work to be performed under the contract, the arbitrator held that the work at issue is to be exclusively performed by bargaining unit employees because the Commission could not show sufficient evidence of a long-standing practice of subcontracting this work. The arbitrator sustained the grievance and as a remedy ordered the parties to identify the hours

required to perform the brushing and cleaning work and the employees who would have performed it, and ordered the Commission to compensate those employees at straight-time rates. The Commission petitioned for review to this Court.

II

Review of an arbitrator's award entered pursuant to PERA is limited. The proper judicial inquiry is whether the award draws its essence from the collective bargaining agreement. *Board of Education of the School Dist. of Philadelphia v. Philadelphia Fed'n of Teachers, AFL–CIO,* 147 Pa.Commonwealth Ct. 15, 610 A.2d 506 (1992). Under the essence test, the Court is confined to a determination of whether the arbitrator's decision could rationally be derived from the collective bargaining agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. *American Fed'n of State, County & Municipal Employees, Dist. Council 88 v. City of Reading,* 130 Pa.Commonwealth Ct. 575, 568 A.2d 1352 (1990). The arbitrator's award is to be respected by the courts if it represents a reasonable interpretation of the agreement between the parties. *Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989). Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court. *Midland Borough School Dist. v. Midland Education Ass'n, PSEA,* 532 Pa. 530, 616 A.2d 633 (1992). A reviewing court may disturb the award only where there is a manifest disregard of the agreement, completely unsupported by principles of contract construction. *Aliquippa Education Ass'n v. School Dist. of Aliquippa,* 63 Pa.Commonwealth Ct. 91, 437 A.2d 1039 (1981).

The parties agree that the only issue in dispute before the arbitrator was whether the brushing and cleaning included in the surface-overlay contract was work that by past practice or tradition had been subcontracted. The Commission argues that the arbitrator's award is manifestly unreasonable in light

of what it contends is extensive evidence establishing a long-standing "past practice or tradition" of subcontracting the work in dispute. The Commission asserts that the award ignores this evidence consisting of eleven contracts in which work identical to that in dispute had been subcontracted.

Examination of the Agreement is the first step in this Court's review. Article XVII, Section 4, addresses subcontracting, providing in part:

> The Commission agrees that it will not subcontract any work which, by past practice or tradition, it has not heretofore subcontracted. The Commission may subcontract work that either the employees are incapable of competently performing or which the Commission lacks the necessary manpower and/or equipment with which to perform such work.

Further, Article XXII, Section 1, of the Agreement provides:

> The Commission agrees to respect the jurisdiction rules of the Union and shall not direct or require their employees or persons other than the employees in the bargaining units defined herein to perform work which is recognized as the work of the employees in said units, except where such work has been heretofore done by such non-unit employees or unless such work is of an experimental, training, casual nature or an act of God or conditions beyond control of the Commission and/or does not produce the layoff of any employee in the bargaining unit.

Under Article XXVI of the Agreement, the arbitrator shall have no power or authority to add to, subtract from, or modify the provisions of the Agreement and shall confine his or her decision solely to its application and interpretation.

The Commission maintains that it established the existence of subcontracting work by past practice or tradition as contemplated by the Agreement and that the arbitrator nonetheless created, in effect, a new requirement that the Commission may not subcontract such work unless the subcontracted work is a necessary adjunct to another project. The Commission relies upon *State System of Higher Education v. United Plant*

*Guard Workers of America, Local Union No. 509,* 149 Pa.Commonwealth Ct. 193, 612 A.2d 645, *appeal denied,* 533 Pa. 613, 618 A.2d 403 (1992) (an arbitrator's authority does not include changing the language of the contract or adding new and additional provisions). However, *United Plant Guard Workers* is inapposite because it concerned an arbitration award which ignored a collective bargaining agreement provision that grievances must be filed within fifteen days of the date of occurrence and instead allowed the grievance to be filed five years after the date of occurrence; this Court reversed the arbitrator's award.

As found by the arbitrator in the present matter, the Commission's evidence merely demonstrated that the Commission had a past practice of subcontracting brushing and cleaning work when it was ancillary to the main body of the construction work to be performed under the contract. The arbitrator found that the brushing and cleaning work in the contract at issue was not inextricably tied to I.A. Construction's performance of the surface-overlay project, thus specifically resolving the factual issue presented. In so doing, the arbitrator neither changed the language of the contract nor added new and additional phrases. Instead, the arbitrator was called upon to decide the factual question of the parties' intent based upon evidence of past practice.

An arbitrator in all cases in which interpretation of a collective bargaining agreement is called for is deciding the factual question of what the parties intended. *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 473 Pa. 576, 375 A.2d 1267 (1977). In the absence of an express provision to the contrary, an arbitrator properly exercises discretion by basing his or her conclusion on the implications of the agreement. *Aliquippa Education Ass'n; District Council 83, American Fed'n of State, County & Municipal Employees v. Hollidaysburg Area School Dist.,* 60 Pa.Commonwealth Ct.

617, 432 A.2d 304 (1981).[2] Moreover, an arbitrator may properly examine evidence of past practice which may be used to create or prove a separate, enforceable condition of employment which cannot be derived from the express language of the collective bargaining agreement. *Wilkinsburg–Penn Joint Water Auth. v. Utility Workers Union of America, Local 191,* 129 Pa.Commonwealth Ct. 561, 566 A.2d 381 (1989) (arbitrator may examine previous work practice to conclude that answering telephones by repairmen during certain shifts was bargaining unit work).

The Commission's argument is tantamount to a request that this Court reexamine the evidence and come to a different conclusion regarding the parties' intent than did the arbitrator: however, such a measure would exceed this Court's scope of review. It is the function of an arbitrator to reach a reasonable interpretation of the collective bargaining agreement and to apply that construction to the facts presented. *Division 85, Amalgamated Transit Union v. Port Auth. of Allegheny County,* 62 Pa.Commonwealth Ct. 528, 437 A.2d 105 (1981). An arbitrator's interpretation of the parties' intent is treated as a finding of fact: a claim that an arbitrator has incorrectly interpreted the intention of the parties to the agreement is not cognizable on appeal. *Commonwealth v. Council 13, American Fed'n of State, County and Municipal Employees,* 43 Pa.Commonwealth Ct. 177, 401 A.2d 1248 (1979).

If two conclusions can reasonably be drawn from the evidence, the conclusion of the arbitrator as factfinder will prevail. *Scholastic Technical Serv. Employees, Pennsylvania State Univ., Local Union No. 8 v. Pennsylvania State Univ.,* 37 Pa.Commonwealth Ct. 622, 391 A.2d 1097 (1978). Furthermore, the fact that an arbitrator in analyzing a dispute may

2. In *Dist. Council 88, AFSCME,* a trial court vacated an arbitration award on the basis that the arbitrator had purportedly inserted a nonexistent provision into the collective bargaining agreement. This Court reversed the trial court and upheld the arbitrator's conclusion that the employer deprived the members of the bargaining unit of work that normally should have been performed by that group.

have failed to properly perceive the question presented or erroneously resolved it does not provide justification for judicial interference. *Leechburg Area School Dist. v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981). Under this analysis, the arbitrator's conclusion that the Commission's evidence demonstrated that the past practice was to subcontract brushing and cleaning work only where it was ancillary to a major construction project—and to assign it to the maintenance shed employees when it was not—was within the authority conferred upon him by the Agreement and is a finding of fact not reviewable by this Court.

The Commission last argues that even if the arbitrator was correct in his conclusion that the Commission violated the agreement by subcontracting the work in dispute, the remedy ordered by the arbitrator exceeds his authority under the Agreement. The Commission asserts that no bargaining unit employee lost any work due to subcontracting the project, and that the remedy provides a windfall to the employees to which they are not entitled. The Commission relies upon *Midland Education Ass'n,* in which the Supreme Court held that an arbitrator's remedy had exceeded his authority under the collective bargaining agreement. That case is inapplicable to the matter sub judice however because the Court merely held that the arbitrator's remedy was improper only to the extent that it went beyond the expiration date of the agreement, a situation not present here.

The Agreement herein sets no limits on the remedial power of the arbitrator, and his decision neither adds to, subtracts from, nor modifies the provisions of the Agreement. Neither does the award result in a windfall to the bargaining unit employees since, but for the improper subcontracting of the work, the employees would have received additional wages. In such situations, an arbitrator must be given latitude and flexibility in fashioning a proper remedy and should not be limited in his or her problem solving to the exact language of the agreement. *See Pennsylvania State Education Ass'n with Pennsylvania School Serv. Personnel/PSEA v. Appalachia Intermediate Unit 08,* 505 Pa. 1, 476 A.2d 360 (1984)

(arbitrator was within his authority to find a violation of the collective bargaining agreement and award damages and interest to employees); *Midland Education Ass'n; Danville Education Ass'n v. Danville Area School Dist.*, 78 Pa.Commonwealth Ct. 238, 467 A.2d 644 (1983) (arbitrator did not exceed authority in awarding monetary damages and ordering return to previous work schedule); *Council 13, AFSCME* (although collective bargaining agreement was silent on remedy where compensation is delayed, arbitrator was within his authority by awarding interest paid on the delayed compensation). Accordingly, the award of the arbitrator is affirmed in its entirety.

## *ORDER*

AND NOW, this 24th day of March, 1994, the arbitrator's award is affirmed.