**DELAWARE COUNTY PRISON EMPLOYEES INDEPENDENT UNION; Robert Pizzi, President, Delaware County Prison Employees Independent Union, in his official capacity and as a taxpayer; and Michael Pelleritti, Secretary, Delaware County Prison Employees Independent Union, in his official capacity and as a taxpayer, Appellants,**

**v.**

**DELAWARE COUNTY, Pennsylvania; the Delaware County Council; Ward T. Williams, Paul G. Mattus, Thomas H. Killion, Wallace H. Nunn, and John J. McFadden, in their capacity as members of the Delaware County Council; The Delaware County Board of Prison Inspectors; and Charles Sexton, William Kelly, Elizabeth Signor, Ward Williams, and John McKenna, in their capacity as members of the Delaware County Board of Prison Inspectors and Wackenhut Corrections Corporation.**

Commonwealth Court of Pennsylvania.

Argued June 11, 1996.

Decided Aug. 9, 1996.

Ralph J. Teti, for Appellants.

Richard P. McElroy, for Appellees.

Richard H. Glanton, for Appellee, Wackenhut Corrections Corp.

Before McGINLEY and KELLEY, JJ., and MIRARCHI, Jr., Senior Judge.

McGINLEY, Judge.

The Delaware County Prison Employees Independent Union, et al. (DCPEIU) appeals from an order of the Delaware County Court of Common Pleas (trial court) which denied DCPEIU's request for a mandatory injunction, granted the preliminary objections of Delaware County (County) and Wackenhut Corrections Corporation (Wackenhut) (collectively, Appellees) and granted Appellees' petition to set aside an arbitration award.

On July 31, 1995, Delaware County Council (Council) issued a notice to the president of Appellants' union stating that all of the correctional officers employed at the Delaware County Prison would be laid off effective midnight, September 30, 1995. Pursuant to an agreement between Wackenhut Corrections Corporation (Wackenhut) and the Delaware County Board of Prison Inspectors (Board), Wackenhut's employees were contracted to perform the duties of the corrections officers.

Appellants filed charges of unfair labor practices against the County as well as a grievance pursuant to the labor contract. Additionally, Appellants filed a complaint in equity and a petition for preliminary injunction with the common pleas court. In an opinion and order dated September 27, 1995, the common pleas court denied Appellants' petition and Appellants appealed to this Court. In an order dated September 29, 1995, this Court granted an injunction pending appeal. Appellees' application for further review by our Pennsylvania Supreme Court was denied.

In an opinion and order dated February 23, 1996, this Court reversed the trial court's denial of preliminary injunction and remanded for further proceedings. Subsequently, on February 26, 1996, the Pennsylvania Labor Relations Board sustained an unfair labor practice charge filed by DCPEIU on October 26, 1995, challenging the County's refusal to bargain with the union over a successor collective bargaining agreement. Further, on March 18, 1996, DCPEIU demanded that the County submit to binding interest arbitration as required by section 805 of the Pennsylvania Employee Relations Act (PERA), Act of July 23, 1970, P.L. 563, as amended, 43 P.S. § 1101.805.

On March 19, 1996, the trial court issued an order granting the request for preliminary injunction, but limiting the injunction to the length of the existing collective bargaining agreement, which was due to expire on March 31, 1996. On March 28, 1996, Appellants charged the County with an unfair labor practice challenging the County's ongoing refusal to submit to interest arbitration and to bargain over the decision to privatize the prison. On March 29, 1996, Appellants filed a second action in equity and petition for preliminary injunction with the trial court seeking to preliminarily enjoin Appellees

from proceeding with the privatization plans until the pending unfair labor practice charges and the grievance arbitration were fully and finally resolved.

On March 28, 1996, the PLRB issued an order sustaining DCPEIU's grievance challenging the County's prison privatization efforts as violative of the parties' collective bargaining agreement. At midnight on March 31, 1996, Wackenhut assumed the operation and management of the prison and the County laid off all of its correctional officers. On April 3, 1996, the County filed a petition to vacate the arbitrator's award, and also filed preliminary objections to Appellants' second complaint on the grounds that there was a pending action.

In an opinion dated April 15, 1996, the trial court denied Appellants' petitions for preliminary and permanent injunctive relief, granted the County's preliminary objection to Appellants' second complaint, and granted the County's petition to vacate the arbitrator's award. Appellants appealed to this Court and also sought an injunction pending appeal. In an order dated May 6, 1996, this Court granted Appellants relief. Appellees applied to our Pennsylvania Supreme Court for further review of this Court's May 6, 1996, order. On May 23, 1996, our Pennsylvania Supreme Court vacated this Court's order of May 6, 1996, per curiam.

Before us now is Appellants' appeal from the April 15, 1996, order of the trial court. On appeal, Appellants raise the following issues for our review: 1) whether the trial court erred in vacating the arbitrator's award; 2) whether the trial court erred when it denied Appellants' petition for permanent injunctive relief; 3) whether the trial court erred when it denied Appellants' petition for preliminary injunctive relief; and 4) whether the trial court erred when it granted Appellees' preliminary objections to Appellants' second complaint.

■ Initially, Appellants assert that the trial court erred when it vacated the arbitrator's award. We note that:

Review of an arbitrator's award entered pursuant to PERA is limited. The proper judicial inquiry is whether the award draws its essence from the collective bargaining agreement. *Board of Education of the School District of Philadelphia v. Philadelphia Fed'n of Teachers, AFL–CIO,* 147 Pa.Commonwealth Ct. 15, 610 A.2d 506 (1992). Under the essence test, the Court is confined to a determination of whether the arbitrator's decision could rationally be derived from the collective bargaining agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. *American Fed'n of State, County & Municipal Employees, Dist. Council 88 v. City of Reading,* 130 Pa.Commonwealth Ct. 575, 568 A.2d 1352 (1990). The arbitrator's award is to be respected by the courts if it represents a reasonable interpretation of the agreement between the parties. *Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989). Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court. *Midland Borough School Dist. v. Midland Education A'ssn, PSEA,* 532 Pa. 530, 616 A.2d 633 (1992). A reviewing court may disturb the award only where there is a manifest disregard of the agreement, completely unsupported by principles of contract construction. *Alliquippa [Aliquippa] Education A'ssn v. School Dist. of Alliquippa [Aliquippa],* 63 Pa.Commonwealth Ct. 91, 437 A.2d 1039 (1981)

*Pennsylvania Turnpike Commission v. Teamsters Local Union No. 250,* 162 Pa. Cmwlth. 633, 639, 639 A.2d 968, 971–972 (1994).

■ The arbitrator determined that a resolution of the controversy revolved around the interpretation of Article 2 of the collective bargaining agreement, which states in part:

The Employer reserves the right to manage and operate its establishment in such a manner as it sees fit, including but not limited to:

a. Right to hire, transfer, promote, demote, lay-off, discipline or discharge em-

ployees to the extent not modified by this Agreement.

. . . .

c. To subcontract work and services and delete and discontinue departments and personnel within County Government;

. . . .

Agreement between Delaware County Prison Board and Delaware County Prison Employees Independent Union Correctional Officers (Agreement), effective April 1, 1990, at 2; Reproduced Record (R.R.) at 1057a.

The arbitrator determined that the parties had used the term "privatization" in their discussions back in 1984–85, and further noted that this term was not incorporated into the final draft of the agreement. Finally, the arbitrator noted that where, as here, the agreement is not clear and unambiguous, then any ambiguity must be decided against the interpretation sponsored by the drafter of the language, which was the prison Board in this case. The arbitrator accordingly, concluded that there was no meeting of the minds between the parties over whether the CBA's subcontracting clause permitted the County to completely repudiate the rest of the agreement's terms by contracting out all bargaining unit work. The arbitrator sustained the grievance and directed the County to cease and desist from privatizing the entire prison operation.

In vacating the arbitrator's award, the trial court determined that the arbitrator erred by concluding that Article II of the agreement did not authorize the County to contract out all prison guard positions. The trial court also held there was no legal basis

for the arbitrator to distinguish between the terms "subcontract" and "privatize". Finally, the trial court determined that the arbitrator had no authority to fashion an award which extended beyond the life of the parties' collective bargaining agreement which expired on March 31, 1996. We disagree.

■■■■■ This Court has held that:

The key point is that the *essence test is the law,* and that test upholds an arbitrator's award even if a judicial interpretation of the contract, including matter incorporated into it, would reach an opposite result. Courts have no business overruling an arbitrator merely because their interpretation of the contract is different from his interpretation. *Conneaut School Service [Personnel] Association v. Conneaut School District,* 96 Pa.Commonwealth Ct. 586, 591, 508 A.2d 1271, 1274 (1986), citing *Leechburg [Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981)].

*Northumberland County Area Vocational– Technical School Education Association v. Northumberland County Area Vocational– Technical School,* 120 Pa.Cmwlth. 59, 63, 547 A.2d 1287, 1289 (1988) (emphasis in original). Here, the trial court concluded that the arbitrator's award did not draw its essence from the agreement simply because the trial court would have interpreted Article II of the agreement in a different manner. We find that the trial court accordingly erred in making such a determination and that the arbitrator's award does draw its essence from the agreement.[1]

Additionally, the trial court determined that the arbitrator's award could not survive beyond the expiration date of the collective bargaining agreement. Appellants contend

1. We also note that the trial court's interpretation of Article II of the agreement would give the County the authority to repudiate the entire agreement at any time. A basic tenant of contract law holds that such a contract is illusory and unenforceable.

A contract is evidenced by a mutuality of obligation. A mutuality of obligation exists when both parties to the contract are required to perform their respective promises. If a mutuality of promises is absent, the contract is unenforceable. [*Greene v. Oliver Realty Inc.,* 363 Pa.Super. 534, 526 A.2d 1192, appeal denied, 517 Pa. 607, 536 A.2d 1331 (1987).] A

promise to perform or forebear from performing must be supported by consideration. *Id.* If the promise is entirely optional with the promisor, it is said to be illusory and, therefore, lacking consideration and unenforceable. *Best v. Realty Management Corp.,* 174 Pa.Super. 326, 101 A.2d 438 (1953); J.D. Calamari & J.M. Perillo, The Law of Contracts § 4–17 (2nd ed.1977). The promisor has committed him/herself to nothing. J.D. Calamari, supra; E.A. Farnsworth, Contracts § 2.13 (1982). *Geisinger Clinic v. Di Cuccio,* 414 Pa.Superior Ct. 85, 91, 606 A.2d 509, 512 (1992).

the collective bargaining agreement survives beyond its expiration date, until the parties negotiate a successor contract or an interest arbitration panel awards a successor contract. Appellants rely on PERA and case law of the Commonwealth to advance this proposition.

The trial court relied on *Midland Borough School District v. Midland Education Association* where it was determined that a public employer may lawfully lay-off employees who are union members at the expiration of the collective bargaining agreement. In *Midland*, the Midland Borough School District had entered into an agreement with a neighboring school district to send its seventh through twelfth grade students to the neighboring district on a tuition basis at the expiration of the collective bargaining agreement which expired on August 31, 1986. The agreement eliminated all teaching positions for seventh through twelfth grade students in the Midland Borough School District. An arbitrator sustained the Midland Education Association's (union) grievance and ordered the Midland Borough School District to rescind its contract with the neighboring school district and return the affected teachers to work no later than the 1987–88 school year. Our Pennsylvania Supreme Court upheld this Court's modification of the agreement, reasoning that the remedy was improper to the extent it extended beyond the expiration of the collective bargaining agreement. The Supreme Court placed great importance on the fact that affirming the arbitrator's award would require reopening a facility which had been closed for some six years, stating, "[t]o reiterate, the remedy awarded by the arbitrator would require Appellee School District to re-open an already closed school and re-employ any teachers who so desire by the 1987–88 school year." *Midland* at 540, 616

A.2d at 638. We find that the trial court erroneously relied on *Midland* because that dispute did not involve prison employees and, in the present case, no facilities have to be re-opened.

Section 805 of PERA, 43 P.S. § 1101.805 provides as follows:

**Section 805. Guards and court personnel; binding arbitration**

Notwithstanding any other provisions of this act where representatives of units of guards at prisons or mental hospitals or units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining and mediation as required in section 801 of this article [43 P.S. § 1101.801] has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which· would require legislative enactment to be effective shall be considered advisory only.

Our Pennsylvania Supreme Court examined Section 805 of PERA as it applies to prison guards in *Office of Administration v. Pennsylvania Labor Relations Board*, 528 Pa. 472, 598 A.2d 1274 (1991).

In *Office of Administration v. Pennsylvania Labor Relations Board*, the Commonwealth had refused to bargain with prison guards over items it claimed fell within its managerial prerogative. The guards sought interest arbitration on June 21, 1985. The agreement in question contained an expiration date of June 30, 1985. Hearings were held before a hearing examiner on July 10, 1985, and September 18, 1985. The hearing examiner found that the Commonwealth violated Sections 1201(a)(1) and (5)[2] of PERA,

---

2. The pertinent provisions of Section 1201 of PERA state:

(a) Public employers, their agents or representatives are prohibited from:

(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this Act [relating to employe rights].

. . . .

(5) Refusing to bargain collectively in good faith with an employe representative which is

the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

43 P.S. § 1101.1201(a)(1) and (5), by refusing to proceed to arbitration.

The examiner concluded that the controversy should be submitted to an interest arbitration panel convened under Section 805 of PERA to fashion an award. The Commonwealth's exceptions to the proposed decision of the hearing examiner were dismissed by the Pennsylvania Labor Relations Board, which proceeded to make the proposed decision and order absolute and final. Although this Court reversed, our Pennsylvania Supreme Court reinstated the order on appeal.

Our Pennsylvania Supreme Court stated:

We have recognized that one value of arbitration, especially in the context of public employer-public employee labor disputes, is the expeditious resolution of disputes that results therefrom. We held in the *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969), that:

The inherent differences between an arbitration panel on the one hand, and courts and administrative agencies on the other, well explain the logic behind the distinction. An arbitration panel is a temporary 'one shot' institution, convened to respond to a specific conflict. Once it reaches a decision it is disbanded and its members disperse. Its resolution of the dispute must be sure and swift, and much of its effectiveness would be lost if the mandate of its decision could be delayed indefinitely through protracted litigation.

436 Pa. at 172–3, 259 A.2d at 440. It is in the best interest of the health and safety of citizens of this Commonwealth that necessary and essential public employees have their labor disputes with the public employer resolved promptly and with a minimum of counter-productive acrimony.

Crucial to properly resolving all labor disputes is the recognition of the goals and purposes to be served by the various dispute resolution mechanisms which exist to resolve labor conflicts. The principle goal of expeditiously resolving bargaining impasses is especially critical in the present matter for two reasons. First, appellant AFSCME is representing correctional officers and psychiatric security personnel who perform an essential service in protecting the safety and welfare of the Citizens of this Commonwealth. Second, by virtue of the necessity of their continuous employment, the legislature has denied prison guards and psychiatric security personnel the right to strike. The *quid pro quo* for such an arrangement is the provision for mandatory binding interest arbitration which expedites the resolution of collective bargaining impasses. The PLRB correctly concluded, after considering the charges of unfair labor practices, that the rights of both parties were best served by requiring the Commonwealth to proceed immediately to arbitration. To conclude otherwise would result in an unwarranted delay of the only recourse available to the members represented herein by AFSCME. A protracted litigation process, the alternative required by the court below, contravenes the express policy behind resolving labor disputes, and also conflicts with our clearly stated admonition against the practice of engaging in preliminary litigation to resolve in 'one forum the power of another forum to decide the substantive issue.' [*PLRB v.*] *Bald Eagle [Area] School District,* [499 Pa. 62, 68, 451 A.2d 671, 674 (1982)]. Additionally, should the issues involved be determined to fall within the Commonwealth's managerial prerogative, and thus be non-negotiable, the Commonwealth's rights are still protected by its statutory right to appeal any such arbitration award.

*Office of Administration v. Pennsylvania Labor Relation Board,* at 480–482, 598 A.2d at 1276. The Supreme Court accordingly reversed even though the agreement had expired by its terms six years earlier.

In the present matter, the record reveals that DCPEIU has initiated a number of actions designed to enforce what it feels are its contractual and statutory rights, including three unfair labor practice charges alleging that the County violated PERA by: 1) refusing to provide requested information regarding its privatization efforts (filed on July 10, 1995); 2) refusing to bargain with the Union over the decision to privatize the prison (filed on August 7, 1995); and 3) engaging in anti-

union discrimination by seeking to privatize the prison (filed on September 5, 1995). Additionally, DCPEIU filed a grievance challenging the County's efforts to privatize the prison as violative of the parties' collective bargaining agreement. The August 7, 1995, grievance resulted in the aforementioned March 28, 1996, arbitration award in favor of Appellants. DCPEIU also filed a complaint in equity with the trial court on August 21, 1995, and a petition for preliminary injunction on August 30, 1995. On October 26, 1995, DCPEIU filed a fourth labor charge challenging the County's refusal to bargain with the union over a successor collective bargaining agreement. Finally, on March 18, 1996, DCPEIU demanded that the County submit to binding interest arbitration as required by Section 805 of PERA to resolve the parties' outstanding collective bargaining dispute.

■ Appellees maintain that the decision to privatize the prison is part of "the public employer's inherent right to make fundamental political decisions regarding the level of services to be provided to the public" and accordingly, binding interest arbitration is not required under Section 805 of PERA. Appellees' brief at 15.

Our Pennsylvania Supreme Court discussed Section 805 of PERA in *Office of Administration v. Labor Relations Board:*

Clearly, the event which triggers the provision of this section is the arrival at an 'impasse' between the parties attempting to negotiate conditions of their collective bargaining agreement. An 'impasse' has been defined as '[a] situation offering no escape, difficulty without solution or an argument where no agreement is possible; deadlock.' Webster's New World Dictionary, 703 (Second College Edition, 1982). In the present matter, the Commonwealth declined to appoint an arbitrator and unequivocally refused to proceed to arbitration. Since no bargaining or resolution of disputes can occur if ·one of the parties refuses to participate in discussions, *a fortiori*, an impasse is created. Accordingly, pursuant to the express statutory scheme

of Section 805, the unresolved issues were required to be sent to arbitration.

*Id.* at 478, 598 A.2d at 1276–1277 (footnote omitted). Accordingly, in the present controversy, Appellees' refusal to proceed to arbitration according to Section 805 of PERA created an impasse.

■ In *East Pennsboro Area School District v. Commonwealth of Pennsylvania, et al.,* 78 Pa.Cmwlth. 301, 308–309, 467 A.2d 1356, 1359 (1983), this Court reasoned:

[I]t cannot too often be stated the Pennsylvania labor policy in the public area requires the submission to arbitration of disputes involving the collective bargaining agreement. *County of Allegheny v. Allegheny County Prison Employees,* 476 Pa. 27, 381 A.2d 849 (1977). By [sic] allowing the employer to unilaterally refuse to submit a dispute to arbitration would in effect allow the employer's interpretation to control. While the PLRB has statutory authority to determine questions of arbitrability when it decides an unfair labor practice has been committed by a refusal to arbitrate, the Supreme Court has made clear that questions of arbitrability must first be submitted to an arbitrator and that any refusal to arbitrate a dispute concerning a collective bargaining agreement is *per se* an unfair labor practice.

Accordingly, we conclude that Appellees refusal to arbitrate constituted an unfair labor practice and the trial court erred in determining otherwise.

■ Here, as in *Office of Administration v. Pennsylvania Labor Relations Board,* Appellee's have committed an unfair labor practice by refusing to proceed to binding arbitration. In light of the express policy behind resolving labor disputes as noted by our Supreme Court, especially where, as here, the dispute involves prison guards, we must conclude that the trial court also erred when it determined that the arbitrator's award had no effect after the expiration date of the collective bargaining agreement.

Accordingly, we reverse the trial court's vacation of the arbitrator's decision.[3]

3. Due to our disposition of the initial arguments raised, we need not examine those that remain.

*ORDER*

AND NOW, to wit, this 9th day of August, 1996, the order of the Court of Common Pleas of Delaware County at No. 96–3646, and dated April 15, 1996, is reversed. The arbitrator's award dated March 28, 1996, is reinstated. Appellees, their officers, agents and representatives are directed to cease and desist from privatizing the prison operation in compliance with the arbitrator's award at AAA Case No. 14 390 01365 95A, dated March 28, 1996, within twenty-one days from the date of this Order.

The appeals at 981 C.D.1996 and 983 C.D. 1996, are dismissed in light of this order.

We note, however, that we would conclude that the trial court erred when it denied Appellants petition for permanent injunction. Our findings that an impasse was reached, and that Appellees' failed to arbitrate following that impasse, would lead us to conclude that Appellants' rights are clear and free from doubt and the harm created by the resulting unfair labor practice is great and irreparable. Accordingly, we would find that the trial court erred when it denied Appellants' request for a permanent injunction.