613 A.2d 68

**ELIZABETH FORWARD SCHOOL DISTRICT, Appellant,**

**v.**

**PENNSYLVANIA LABOR RELATIONS BOARD and AFSCME, District Council 84, AFL–CIO, Appellees.**

Commonwealth Court of Pennsylvania.

Heard July 10, 1992.

Decided July 15, 1992.

Publication Ordered Aug. 5, 1992.

236

William C. Andrews, for appellant.

William H. Haller, Peter Lassi and James L. Crawford, for appellees.

KELLEY, Judge.

The Pennsylvania Labor Relations Board (PLRB) requests this court to declare that no automatic supersedeas exists upon the filing of a petition for allowance of appeal by Elizabeth Forward School District (district) in this case or, in the alternative, to vacate said automatic supersedeas, should

one be found to exist. Additionally, the PLRB requests enforcement of this court's order entered on April 2, 1992.

This case arose following the June 30, 1989 expiration of a contract between the district and the American Federation of State, County and Municipal Employees, District Council 84, AFL–CIO (AFSCME). When the parties were unable to reach agreement on a new contract with respect to bus drivers, aides and mechanics employed by the district and represented by AFSCME, the district proceeded to solicit bids for the subcontracting of all busing services. On August 15, 1989, while negotiations between the district and AFSCME were continuing, the district's board of directors voted to approve the subcontract.

AFSCME timely filed a complaint of unfair labor practices with the PLRB. A hearing officer concluded that the district had committed an unfair labor practice and ordered the district to rescind the subcontract and reinstate the work previously performed by members of the bargaining unit. The PLRB dismissed the district's exceptions to the hearing officer's proposed order and made that order absolute and final. On August 21, 1991, the Court of Common Pleas of Allegheny County found the PLRB order to be supported by substantial evidence and dismissed the district's petition for review. This court affirmed the order of the court of common pleas in a memorandum opinion and order dated April 2, 1992.

On April 23, 1992, the PLRB filed an application for enforcement of our April 2 order. In its answer, the district avers that it has complied with those portions of the PLRB order "over which the School District had exclusive means of compliance," including rescinding the subcontract and reinstating work previously performed by bargaining unit members.[1] The district states, however, that it has been unable to comply with that portion of the order requiring payment of back pay, because "[a]ppellee AFSCME has refused to cooperate with the School District in negotiating for and/or develop-

1. The district also states that while it has offered reinstatement to bargaining unit members, "the vast majority of the Bargaining Unit members have refused the reinstatement."

ing liability calculation formulas or agreeing to the mechanics of compliance with the PLRB order." Finally, the district notes that it did not have sufficient funds to comply with the back pay portion of the PLRB order until after July 1, 1992, because the district "did not have the financial or statutory ability to set aside sufficient funds during fiscal year 1991–92."

AFSCME and the PLRB counter that although the district has formally rescinded the subcontract and offered reinstatement, only 13 of 40 positions have been filled by bargaining unit members, and that the remainder remain filled by "substitute" employees of the former subcontractor due to the district's lack of diligence in advertising the positions. AFSCME and the PLRB also contend that the district has failed to make good faith efforts in order to determine the amount of back pay due to individual bargaining unit members.

The district filed a timely petition for allowance of appeal with our Supreme Court on May 1, 1992. On May 19, 1992, the PLRB filed applications seeking a declaration that the appeal did not operate as an automatic supersedeas or, in the alternative, to vacate said automatic supersedeas. Following argument on June 4 and July 10, 1992, we conclude that the filing of the petition for allowance of appeal did operate as an automatic supersedeas, and will enter an order vacating the same. We will also grant enforcement of the PLRB's order as modified by our order entered this date.

## EXISTENCE OF AUTOMATIC SUPERSEDEAS

Pa.R.A.P. No. 1736 relevantly provides:

**(a) General rule.** No security shall be required of:

. . . .

(2) Any political subdivision or any officer thereof, acting in his official capacity, except in any case in which a common pleas court has affirmed an arbitration award in a grievance or similar personnel matter.

. . . .

**(b) Supersedeas automatic.** Unless otherwise ordered pursuant to this chapter the taking of an appeal by any party specified in Subdivision (a) of this rule shall operate as a supersedeas in favor of such party.

It is uncontested that the district is a "political subdivision" which has taken an appeal of this court's order. The PLRB, however, argues that this case is not controlled by Rule 1736, but rather by Pa.R.A.P. 1781, which contains no automatic supersedeas provision for appeals from determinations of governmental units which are commenced by a petition for review.

In *Colston v. Department of Community Affairs,* 104 Pa.Commonwealth Ct. 165, 521 A.2d 513 (1987), we explained that Chapter 17 of the Rules of Appellate Procedure is divided into several subheadings, and that the form of the action determines which subheading is applicable. Rules 1731–1751, for example, apply to civil actions, while Rules 1781–1782 apply to actions on petition for review. In *Colston,* the Department of Community Affairs argued that it was entitled to an automatic supersedeas despite the fact that the matter at issue was commenced by a petition for review of an order of the State Civil Service Commission. We concluded that no automatic supersedeas existed because the action in *Colston* was "commenced by a petition for review" under Chapter 15 of the Appellate Rules, and thus was controlled by Rule 1781, which did not provide for an automatic supersedeas.

This case, to the contrary, began as an appeal from a order of the PLRB to the court of common pleas pursuant to 42 Pa.C.S. § 933(a)(1)(vii). Further appeal to this court is therefore governed by Chapter 9 of the Appellate Rules, and subsequent appeal to our Supreme Court is controlled by Chapter 11 of the Appellate Rules. Therefore, neither the appeal in this court nor the appeal now pending before the Supreme Court was "commenced by a petition for review" and Rule 1781 does not apply. Rather, Rule 1736(b) affords the

political subdivision an automatic supersedeas on its appeal from the common pleas court to this court.[2] As to whether a party designated in Rule 1736(a) is entitled to an automatic supersedeas upon the filing of a petition for allowance of appeal to our Supreme Court, we note that the rule states only that the "taking of an appeal" shall operate as a supersedeas. Pa.R.A.P. 102 defines "appeal" as:

> Any petition or other application to a court for review of subordinate governmental determinations. The term includes an application for certiorari under 42 Pa.C.S. § 934 (writs of certiorari) *or under any other provision of law.* .... (emphasis added).[3]

We therefore conclude that the filing of a petition for allowance of appeal with our Supreme Court operates as an automatic supersedeas of this court's April 2, 1992 order. We now turn to the PLRB's request to vacate said automatic supersedeas.

## APPLICATION TO VACATE AUTOMATIC SUPERSEDEAS

 As noted by Darlington,[4] when an appellee seeks to vacate an automatic supersedeas, the appellee bears the burden, which is not merely to demonstrate that the appellant has

---

2. Despite the existence of an automatic supersedeas, we note that while this appeal was pending before Commonwealth Court, the district requested a supersedeas, which was denied by order of a single judge of this court on November 26, 1991. The district's failure to request reconsideration of this order, coupled with our subsequent decision on the merits, of course, moots further consideration of the propriety of this order. *See Larocca v. Workmen's Compensation Appeal Board (Pittsburgh Press),* 140 Pa.Commonwealth Ct. 192, 592 A.2d 757 (1991).

3. *See* G. Ronald Darlington et al., Pennsylvania Appellate Practice § 1736.4 (1986) (hereinafter Darlington), which states that:
 > While no reported case has so held, it should be assumed that subdivision (b) provides an automatic supersedeas not only when a party designated in subdivision (a) files a notice of appeal pursuant to Chapter Nine of the Rules, but also when such party files a petition for allowance of appeal to the Supreme Court of Pennsylvania. (Footnotes omitted.)

4. Darlington, § 1736.7.

failed to meet the *Process Gas* standards [5] to obtain a supersedeas in the first instance. Therefore, it is inappropriate to argue that the appellant may not be injured if the automatic supersedeas is vacated. Appellee must convince the court that appellee will be irreparably harmed if the automatic supersedeas is not vacated.

■ We accept the PLRB's position that a failure to vacate the automatic supersedeas will cause irreparable harm both to the PLRB, AFSCME, and the public interest. Since the entry of the PLRB's final order on March 27, 1991, the district has been under the obligation to comply with that order. Both the trial court and this court have held for the PLRB on the merits and have denied successive applications for stays. Yet, despite "winning" before three successive tribunals, the members of the bargaining unit have yet to receive any monetary compensation whatsoever. Further delay would serve both to injure the members of the bargaining unit, as well as to erode public confidence in the enforceability of PLRB actions. Additionally, we see little probability that the district will ultimately prevail on the merits before our Supreme Court. Having considered these arguments, we believe that the standard for vacating the automatic supersedeas has been met in this case.

## ENFORCEMENT

Although we find that the district has not fully complied with the PLRB order, our discussions with counsel have alerted the court to the practical problems associated with strict compliance with the PLRB order, as well as certain ambiguities in the terms of the order itself, particularly as it concerns payment of back pay. Following a lengthy discussion in which counsel for all parties participated at the direction of the court, the court has determined specific terms and conditions which constitute compliance with the PLRB order. Accordingly, we grant the PLRB application for en-

5. *Pennsylvania Public Utility Commission v. Process Gas Consumers Group,* 502 Pa. 545, 467 A.2d 805 (1983).

forcement with the specific terms and conditions as modified in our accompanying order.

## ORDER

NOW, this 15th day of July, 1992, upon consideration of the application for enforcement filed by the Pennsylvania Labor Relations Board (PLRB) and having concluded that an automatic supersedeas from this court's order of April 2, 1992, exists pending appeal of that order before the Supreme Court of Pennsylvania, it is hereby ORDERED that:

I. Said automatic supersedeas is hereby VACATED.

II. The PLRB's application for enforcement of its order of March 27, 1991, as affirmed by this court on April 2, 1992, is GRANTED, as modified by the following terms and conditions:

## 1. RETIREMENT/PENSION CONTRIBUTION

(a) The wages earned by the Elizabeth Forward School District (district) bus drivers, bus aides, mechanics and mechanics' helpers (bargaining unit employees) in 1988–1989 will be used as the base year for calculation of the retirement/pension contribution.

(b) To the extent there are former bargaining unit employees who may wish to return to work for the purpose of vesting under the retirement system, they are permitted to return to work.

(c) The district will attempt to find out from the State Retirement Board whether bargaining unit employees can receive credited service within the Public School Employes' Retirement System for purposes of retirement for the period during August 1989 through January 28, 1992, without actually returning to work, assuming payment of appropriate contributions by the district, the Commonwealth, and the bargaining unit employees.

## 2. OUT OF POCKET EXPENSES

(a) District shall be liable for bargaining unit employee "out of pocket expenses" where such employee can substantiate the expenses.

(b) "Out of Pocket Expenses" shall include those expenses incurred by bargaining unit employees during the period during August 1989 through January 28, 1992 that would have been covered by the fringe benefit provisions of Article XX of the current Collective Bargaining Agreement between the district and the AFSCME.

(c) Bargaining unit employees shall provide documentation of such "out of pocket expenses" in order to substantiate the same.

## 3. PERSONAL AND SICK LEAVE

(a) Personal Days:

All bargaining unit employees returning to work for the School District will be credited with three (3) personal days [2 for School Year 1991–92, one additional day carried over from prior school years] in accordance with Article X of the Collective Bargaining Agreement. In the event a returning bargaining unit employee used a personal day from January 28, 1992 to date, it will be deducted.

(b) Sick Days:

1. Returning bargaining unit employees—

Shall receive credit for all sick days they would have earned for the period during August 1989 through January 28, 1992.

The district shall buy back all sick days up to 60 days at $12.00/day for all returning bargaining unit employees upon retirement or death consistent with the terms of Article VIII of the existing Collective Bargaining Agreement.

2. Non–Returning bargaining unit employees shall receive no credit or payout for sick days.

3. In the event that a returning bargaining unit employee used sick leave days from January 28, 1992 to date, those

days will be deducted from that employee's sick leave entitlement.

## 4. GROSS WAGES AND SET OFF DEDUCTIONS

(a) The district shall be entitled to a set off deduction period of nine months for wages earned by the bargaining unit employees for each year during August 1989 through January 28, 1992. Set offs shall not include any wages earned during the months of June, July and August.

(b) For purposes of calculation of gross wages and set off wages, the normal work day shall be as follows:

For Mechanics and Mechanics Helpers:

From 6:00 A.M. to 5:00 P.M.

For Bus Drivers and Bus Aides:

From 6:00 A.M. to 5:00 P.M.

Wages earned by bargaining unit employees between these hours will be subject to set off by the district. If the employee began working at a starting time in the normal work day described above or completed working at an ending time in the normal work day described above, all wages earned by the bargaining unit employee during that work day will be subject to set off by the district. Except as described herein, wages earned by bargaining unit employees between 5:00 P.M. and 6:00 A.M. will not be subject to set off deduction by the district.

(c) Moneys spent by the district on athletic transportation during August 1989 through January 28, 1992 will be deducted or a pro rata basis from the gross wages of all bus driver employees. Bus drivers shall not receive back wages for athletic transportation runs that would have been performed by them during August 1989 through January 28, 1992.

(d) No set off shall be credited by the district for wages earned by a bargaining unit employee for a particular job if such employee was working in the same job before and after the period during August 1989 through January 28, 1992.

(e) The district shall be entitled to a set off deduction from the wages of any bargaining unit employee for any earnings which the employee would have lost through sickness.

## 5. DUE DILIGENCE

1). Barker—retired from district.

2). Hayton—retired from district September 1, 1989.

3). Goodfellow—did not show up, whereabouts unknown.

The three (3) individuals mentioned above have provided evidence to the district of their efforts at obtaining employment during the period during August 1989 through January 28, 1992. In the event that Hayton or Goodfellow provide no evidence establishing reasonable efforts at obtaining employment, the district may set off earnings the employee would have earned during August 1989 through January 28, 1992. This amount shall be estimated at 2.5 times the bargaining unit employee's actual 1988–89 wages received from the district.

In the case of Matt Barker, if Mr. Barker does not establish by evidence reasonable efforts to obtain employment during August 1989 through January 28, 1992, the district shall be entitled to a set off deduction from his gross wages of $5,000.00 for each year or a total of $12,500.00.

For bargaining unit employees who worked short amounts of time, only those specific wages earned will be set off. No consideration of the exercise of due diligence for a set off deduction shall be considered.

## 6. PAYMENT TO BARGAINING UNIT EMPLOYEES

The district shall exert its best efforts to calculate the appropriate pay and set off deductions and to insure that bargaining unit employees are paid before the beginning of the 1992–1993 School Year but in any event by September 1, 1992.

## 7. ADVERTISEMENT FOR BUS DRIVER POSITIONS

(a) The district shall expeditiously advertise for the available bus driver positions in local newspapers on Wednesday,

Thursday and Friday of alternate weeks until a full complement of bus drivers is hired.

(b) The district shall expeditiously contact the local unemployment compensation offices for leads in this pursuit.

## 8. MUTUAL COOPERATION

The PLRB, the district and AFSCME shall cooperate in order to bring this matter to conclusion.

## 9. SCHOOL DISTRICT RESOLUTION

The district adopted the following resolution on June 24, 1992:

(a) The district reaffirms the recision of the transportation contract of August 15, 1989 between the district and Laidlaw Transit, Inc. The recision occurred on September 5, 1991.

(b) The sole continuing written contractual obligation with Laidlaw Transit, Inc. is the leasing of buses and the provision of management services in accordance with the proposal of August 25, 1991.

(c) The district agrees to make all reasonable efforts to fill all collective bargaining unit vacancies with Elizabeth Forward employees.

(d) Nothing herein contained in Paragraph 9 will restrict any party to either assert the right to hire substitutes or object thereto.

## 10. REINSTATEMENT OF BARGAINING UNIT WORK

(a) The district has sent an additional letter to its former bargaining unit employees re-offering return to employment. All such former bargaining unit members shall have ten (10) days from the mailing of an additional solicitation to confirm in writing to the district their intent to return to bargaining unit employment for the 1992–93 school year. Any former employee who fails to respond waives any right to return to bargaining unit employment at the district under this order.

(b) After the expiration of the ten (10) day period, the district shall solicit, interview and offer employment to qualified applicants for the bargaining unit positions.

(c) Until such time as a full complement of bus drivers is hired, the district shall provide adequate and appropriate training for hired employees to obtain the necessary licensing as required by the Commonwealth of Pennsylvania to operate a public school bus. Nothing herein shall require the district to provide remedial reading training for the functional literacy testing as a part of licensing.

(d) The terms of the current Collective Bargaining Agreement with regard to the use of temporary employees shall continue in force. If at the completion of the temporary vacancy period in the Collective Bargaining Agreement the district has been unable to fill the entire complement of bargaining unit positions, the district retains the right to petition this court for appropriate relief.

III. This court shall schedule a hearing not later than the end of the first week of September 1992 to determine whether there has been substantial compliance with this court's order of April 2, 1992, as modified by this order. Nothing herein shall prevent the parties from applying to the court for an earlier hearing and determination.

Jurisdiction retained.