**SNYDER COUNTY PRISON BOARD and County of Snyder, Appellants**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD and Teamsters Local 764.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 2006.

Decided Nov. 29, 2006.

Ryan M. Tira, Williamsport, for appellants.

Warren R. Mowery, Jr., Harrisburg, for appellee, Pennsylvania Labor Relations Board.

Thomas H. Kohn, Philadelphia, for appellee, Teamsters Local 764.

BEFORE: PELLEGRINI, Judge and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The Snyder County Prison Board and the County of Snyder (collectively, Prison Board) appeal an order of the Court of Common Pleas, 17th Judicial District, Snyder County Branch (trial court) holding that the Prison Board committed an unfair labor practice by privatizing food services at the prison without exhausting the impasse resolution procedures contained in Article VIII of the Public Employe Relations Act (Act 195).[1] In so holding, the

1. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301. Article VIII of Act 195, 43 P.S. §§ 1101.801–1101.806a, requires, *inter alia,* mandatory mediation fol-

trial court affirmed a decision of the Pennsylvania Labor Relations Board (PLRB). In this case we consider the applicability of the alternative dispute resolution procedures set forth in Article VIII to labor disputes between prison guards and their public employers. We also consider whether the Prison Board's appeal to this Court triggered an automatic supersedeas of the trial court's order.

## BACKGROUND

Since 2002, Teamsters Local No. 764 (Union) has been the exclusive representative of a bargaining unit of employees of the Snyder County Prison. The collective bargaining agreement (CBA) in effect from January 1, 2002, through January 31, 2005, recognized the Union as the sole and exclusive bargaining agent for "[a]ll full-time and regular part-time prison guards including but not limited to senior correctional officers, correctional officers, correctional officers/secretaries, *correctional officers/cooks,* and correctional officers/maintenance." CBA, Article 1—Recognition, ¶ A (emphasis added). The CBA expressly prohibited all covered employees from striking. CBA, Article 3, Section 5A.

The present controversy began in May 2004, when Union representatives learned that the Prison Board was considering contracting with Aramark Corporation to provide food service operations at the prison. Upon learning of this plan, Donald E. Deivert, President of the Union, sent a letter dated May 13, 2004, to George Nye, Warden of the prison, requesting negotiations over this potential contract. Deivert renewed his request for negotiations in a letter to Nye dated June 15, 2004. By letter dated June 17, 2004, Nye responded that the Prison Board was still gathering information and would negotiate about the contract matter once that process was completed.

On July 9, 2004, counsel for the Prison Board forwarded to Deivert documents about the contract with Aramark.[2] The cover letter indicated that the Prison Board was "open to discuss any questions that the Union may have concerning the contracting out of the food service." Letter from Ryan M. Tira, Esq. to Donald Deivert, July 9, 2004; Union Exhibit 9. By letter dated July 13, 2004, counsel for the Union formally requested negotiations "concerning both the decision to subcontract [the kitchen] work and the effect of doing so." Letter from Thomas H. Kohn, Esq. to Ryan M. Tira, Esq., July 13, 2004, at 1; Union Exhibit 10. The Union indicated that it would oppose any effort that it perceived as interfering with the functions being performed by bargaining unit members.

Representatives from both parties met for the first time on August 5, 2004, to discuss the Aramark contract and the potential savings that would inure to the County. Deivert, representing the Union, took the position that because the recognition clause in the CBA specifically included "correctional officers/cooks," the Prison Board was prohibited from unilaterally contracting out food services. Prison Board representatives countered that the management rights clause in the CBA per-

---

lowed by interest arbitration in labor disputes between public employers and prison guard units that have resulted in an impasse. The provisions of Article VIII that are directly relevant to this appeal are discussed in greater detail below.

2. The documents summarized the County's expenditures for prison kitchen operations in 2003 and estimated that the County could save anywhere from $70,617 to $148,384 per year by contracting with Aramark to provide those services.

mitted it to contract with Aramark.[3] When asked whether the Union would be making its own proposal regarding food service at the prison, Deivert responded in the negative and reiterated his belief that the Prison Board could not contract out bargaining unit work. Reproduced Record at 27a–28a, 74a–76a (R.R. ——).

Thereafter, the parties did not meet but continued to communicate through written correspondence. In a letter dated August 19, 2004, the Union informed the Prison Board that, in the event the contract was executed, Aramark would be obligated to hire the members of the bargaining unit already performing the work, or refrain from hiring non-unit employees to do so. The Union also stated that it expected Aramark to establish contractual relations with the Union similar to those already in place with the Prison Board.

Counsel for the Prison Board responded on September 22, 2004, with several points. First, he stated that the Prison Board would be unable to dictate the terms, conditions or staffing of the food service once it contracted with Aramark. Nevertheless, Aramark had agreed to hire two full-time and one part-time prison employee currently working in food service. Second, counsel stated that the Prison Board could not force Aramark to enter into an agreement with the Union because the Union was not a certified representative of Aramark's employees. Third, counsel reiterated that the Union had not made any counterproposals either with respect to Aramark's bid or the Prison Board's offer to place all employees not retained by Aramark in part-time correctional officer positions.

Counsel for the Union and for the Prison Board spoke with each other on September 24, 2004. The Union's counsel indicated that it would file a charge of unfair labor practices but would not make a counter-proposal.

The Prison Board entered into a contract with Aramark effective October 1, 2004. Aramark hired four of the eight bargaining unit employees that had been working in the food service area. One employee retired, two were hired by the Prison Board as part-time correctional officers, and one employee declined that position.

3. The relevant clause in the CBA provided as follows:

*Section 1.* It is understood and agreed that the Employer, at its discretion, possesses the right to manage all operations including the direction of the working force and the right to plan, direct and control the operation of all equipment and other property of the County, except as modified in this Agreement.

Matters of managerial policy are reserved exclusively to the Employer. These include, but shall not be limited to, such areas of discretion or policy as the functions and programs of the Employer, standards of service, its overall budget, utilization of technology, the organizational structure and the selection and direction of personnel.

*Section 2.* The Employer shall have the right to hire, suspend, discipline or dis-charge for just cause, to assign to jobs, determine job classifications, to transfer, to increase and decrease the working force, to promote and demote, to determine starting and quitting times and numbers of hours to be worked.

*Section 3.* The Employer shall have the right to

A. Select management, supervisory and first level supervisory personnel.

B. Introduce new or improved methods, equipment or facilities or to change existing methods or facilities.

C. Determine the personnel requirements and hours of work required for a particular operation.

D. Establish reasonable rules of conduct and discipline.

CBA, Article 4—Management Rights.

The Union filed a charge of unfair labor practices with the PLRB on October 8, 2004, asserting that the Prison Board had violated Section 1201(a)(1), (3) and (5) of Act 195, 43 P.S. § 1101.1201(a)(1), (3) and (5),[4] by unilaterally transferring bargaining unit work to a private vendor. At the hearing on the Union's charge, the Prison Board acknowledged that it was required to bargain to impasse before contracting out bargaining unit work but asserted that it had met this obligation. The Hearing Examiner found otherwise. He concluded that under Act 195, both the Prison Board and the Union had to exhaust the impasse resolution procedures contained in Article VIII before taking unilateral action; those procedures require mediation and, thereafter, interest arbitration. 43 P.S. §§ 1101.801–1101.806a. Because the parties had not engaged in either mediation or interest arbitration, the Hearing Examiner concluded that the Prison Board had not satisfied its statutory duty to bargain to impasse. The Hearing Examiner recommended that the Prison Board be charged with unfair labor practices under Section 1201(a)(1) and (5) of Act 195, 43 P.S. § 1101.1201(a)(1), (5),[5] and be ordered, *inter alia*, to rescind the Aramark contract, restore the food service work to the bargaining unit, reinstate the displaced employees, and compensate those employees for lost wages and benefits.

The Prison Board filed exceptions to the Hearing Examiner's recommendation. It asserted that the Article VIII impasse resolution procedures were not applicable and, alternatively, that it was entitled to contract with Aramark because an impasse had in fact occurred when the Union refused to provide counterproposals or otherwise negotiate. The PLRB denied the exceptions, reasoning that the Prison Board, as the party seeking to change the *status quo*, was obligated to comply with the alternative dispute resolution procedures set forth in Article VIII of Act 195. The PLRB adopted the Hearing Examiner's proposed decision and order on July 19, 2005.

The Prison Board petitioned the trial court to review the PLRB's order, again arguing that its decision to contract with Aramark was within its managerial prerogative and not subject to the requirements of Act 195. However, even if Article VIII of Act 195 were applicable, the Prison Board maintained that it was not required to exhaust those procedures since the Union had not requested mediation or arbitration. The trial court rejected the Prison Board's arguments and, by order dated December 28, 2005, affirmed the PLRB's decision.

4.  Section 1201(a) of Act 195 provides, in pertinent part, as follows:
    (a) Public employers, their agents or representatives are prohibited from:
    (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.
    * * *
    (3) Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization.
    * * *
    (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.
    43 P.S. § 1101.1201(a).

5.  The Hearing Examiner recommended dismissal of the charge under Section 1201(a)(3) of Act 195, 43 P.S. § 1101.1201(a)(3), because the Union failed to show that the Prison Board contracted out the kitchen work with a discriminatory motive or anti-union animus. That aspect of the Hearing Examiner's decision has not been appealed.

The Prison Board filed the instant appeal on January 20, 2006. It raised to this Court the same issues raised before, and rejected by, the trial court.

On February 17, 2006, the PLRB petitioned the trial court to enforce its December 28, 2005, order. The trial court denied the petition, concluding that an automatic supersedeas of its order had been effected by the Prison Board's appeal. The PLRB then petitioned this Court to enforce the trial court's December 28, 2005, order. This Court held that the trial court's order was stayed automatically by the Prison Board's appeal, but concluded that the PLRB was entitled to partial vacation of the supersedeas.[6] Accordingly, on June 6, 2006, this Court ordered the following relief:

> [The Prison Board] shall bargain in good faith the issue of food services in the County prison with the union and shall not enter into a new contract with Aramark or any other subcontractor during the pendency of this appeal. [The Prison Board] shall further calculate back wages and benefits due to the former bargaining unit members presently employed by Aramark and shall make provision for the payment of such wages and benefits in the event that the PLRB's order is affirmed.

*Snyder County Prison Board and County of Snyder v. Pennsylvania Labor Relations Board and Teamsters Local 764* (No. 118 C.D.2006, Order filed June 6, 2006). The PLRB and the Prison Board each filed applications for reconsideration of the June 6, 2006, order. Reconsideration was granted, and both parties have filed supplemental briefs on the merits of this Court's June 6, 2006, order.

Before addressing the substance of the Prison Board's appeal of the trial court's order of December 28, 2005, we shall consider the question of whether the Prison Board's appeal effected an automatic stay of the trial court's order and, if so, whether this Court erred in partially vacating the automatic supersedeas.

## AUTOMATIC SUPERSEDEAS

■ The PLRB asks us to vacate the order of June 6, 2006, and hold, as a matter of law, that the Prison Board was not entitled to an automatic supersedeas. A local agency's appeal of a court order normally effects an automatic supersedeas under PA. R.A.P. 1736(b). However, there is an exception for court orders dealing with certain labor disputes. The PLRB contends this is that kind of order. For its part, the Prison Board agrees with this Court's holding that it was entitled to an automatic supersedeas but disagrees with this Court's decision to vacate the supersedeas.

We consider, first, whether the Prison Board's appeal effected an automatic supersedeas of the trial court's order. The operative rule is Pennsylvania Rule of Appellate Procedure 1736, which provides, in relevant part, as follows:

(a) General rule. No security shall be required of:

\* \* \*

(2) Any political subdivision or any officer thereof, acting in his official capacity, *except in any case in which a common pleas court has affirmed an arbitration award in a grievance or similar personnel matter.*

(b) Supersedeas automatic. Unless otherwise ordered pursuant to this chapter the taking of an appeal by any party specified in Subdivision (a)

---

6. The matter was considered by a single judge of this Court, Visiting Judge Barry Feudale.

of this rule shall operate as a supersedeas in favor of such party.

PA. R.A.P. 1736 (emphasis added).[7] Stated otherwise, a political subdivision must apply for a stay of a court order affirming an arbitration award; it does not obtain one automatically by filing an appeal.

The PLRB argues that a common pleas court order affirming a PLRB adjudication is a "similar personnel matter" within the meaning of PA. R.A.P. 1736(a)(2). The PLRB does not read this rule's exception to apply only to court orders that affirm arbitration awards. Further, the PLRB contends that its interpretation of Rule 1736 advances a sound policy because it will prevent public employers from using the appeals process to delay or avoid compliance. We disagree with the PLRB's interpretation of PA. R.A.P. 1736(a)(2).

This Court has previously held that an automatic supersedeas is triggered by a political subdivision's appeal of an order of the PLRB. In *Elizabeth Forward School District v. Pennsylvania Labor Relations Board,* 149 Pa.Cmwlth. 235, 613 A.2d 68 (1992),[8] the PLRB charged a school district with unfair labor practices for contracting out the work of the district's bus drivers, aides and mechanics. The PLRB's order was affirmed by the court of common pleas and this Court. The district then petitioned the Pennsylvania Supreme Court for allowance of appeal. The PLRB sought a declaration from this Court that the District's appeal did not entitle it to an automatic supersedeas or, in the alternative, requested an order vacating the supersedeas.

This Court concluded that the filing of a petition for allowance of appeal entitled the district to an automatic stay of this Court's order. *Elizabeth Forward* began as an appeal from an order of the PLRB to the court of common pleas pursuant to 42 Pa.C.S. § 933(a)(1)(vii). Given this posture, we held that "Rule 1736(b) affords the political subdivision an automatic supersedeas on its appeal from the common pleas court to this [C]ourt." *Elizabeth Forward,* 613 A.2d at 70. The instant appeal by the Prison Board to this Court cannot be distinguished from the circumstances of *Elizabeth Forward.*

The PLRB offers a novel interpretation of Rule 1736(a)(2) that was not considered in *Elizabeth Forward.* It contends that its order, which finds the Prison Board to have committed unfair labor practices, falls under the purview of "similar personnel matter." The PLRB ignores the predicate language in the rule that the "common pleas court order [affirms] an arbitration award." PA. R.A.P. 1736(a)(2). Its reading, therefore, cannot be sustained. The exception to an automatic supersedeas is triggered by the affirmance of an *arbitration award,* which award may arise from a grievance or from a "personnel matter" similar to a grievance. Because the present case did not arise from an arbitration award, but from an adjudication of the PLRB, the exception in PA. R.A.P. 1736(a)(2) has no application here. Therefore, the Prison Board effected an auto-

---

7. The official note to the rule explains that the language in subsection (a)(2) "eliminates the automatic supersedeas for political subdivisions on appeals from the common pleas court where that court has affirmed an arbitration award in a grievance or similar personnel matter." PA. R.A.P. 1736, Note.

8. *Elizabeth Forward* was a single-judge reported opinion of Judge Kelley and is therefore not binding precedent. However, in *Public Advocate v. Philadelphia Gas Commission,* 166 Pa.Cmwlth. 41, 646 A.2d 19, 21 (1994), an en banc panel of this Court adopted the reasoning set forth in *Elizabeth Forward.*

matic stay under Pa. R.A.P. 1736(b) when it appealed the trial court's order.

■ Having established that an automatic supersedeas was in effect, we next consider the Prison Board's argument that this Court erred by partially vacating the supersedeas. We find that it did. When the PLRB petitioned for enforcement of the trial court's order, it argued only that there was no automatic supersedeas in effect. The PLRB did not request that this Court vacate the automatic supersedeas.[9] In the absence of a petition to vacate, this Court lacked a basis to order the relief it did.

In doing so, this Court relied upon PA. R.A.P. 105, which provides that the Rules of Appellate Procedure

shall be liberally construed to secure the just, speedy and inexpensive determination of every matter to which they are applicable. In the interest of expediting decision, or for other good cause shown, an appellate court may, except as otherwise provided in Subdivision (b)[10] of this rule, disregard the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion. . . .

PA. R.A.P. 105(a). We must respectfully disagree with this invocation of Rule 105 here.

Rule 105 is a general provision that allows a court, in rare instances, to interpret, modify or disregard any appellate rule to prevent injustice. G. Ronald Darlington, Kevin J. McKeon, Daniel R.

Schuckers & Kristen W. Brown, PENNSYL-VANIA APPELLATE PRACTICE § 105:1 (2006). Typically, appellate courts have invoked Rule 105 to waive procedural defects and irregularities. See, e.g., Commonwealth ex rel. Johnson v. King, 297 Pa.Super. 431, 444 A.2d 108 (1982) (court ignored fact that record did not indicate that civil support action was reinstated); Johnson v. Earl Scheib, Inc., 352 Pa.Super. 278, 507 A.2d 1228 (1986) (court, in the interests of judicial economy, addressed the merits and disregarded numerous procedural irregularities after noting the "serpentine procedural course" of the case); In re Estate of Braun, 437 Pa.Super. 372, 650 A.2d 73, 75 n. 2 (1994) (court disregarded defects in appellant's briefs because they did not preclude meaningful review). The strict requirements for vacating a supersedeas are well-established and cannot be simply overlooked "in the interest of justice."

■ To vacate an automatic supersedeas an appellee "must convince the court that appellee will be irreparably harmed if the automatic supersedeas is not vacated." Elizabeth Forward, 613 A.2d at 70.[11] Here, the PLRB made no attempt to address the standards for vacating a supersedeas by showing, for example, that it would be irreparably harmed if the supersedeas remained in effect. In the absence of a showing that it satisfied the requirements for having the automatic supersedeas vacated, the PLRB was not entitled to the relief ordered by this Court on June 6, 2006.[12]

---

9. By contrast, the appellee in Elizabeth Forward made such a request.

10. Subdivision (b) prohibits a court from enlarging the time for filing a notice of appeal, a petition for allowance of appeal, a petition for permission to appeal or a petition for review. PA. R.A.P. 105(b).

11. It is not enough to argue the obverse, that the appellant may not be injured if the supersedeas is vacated. Elizabeth Forward, 613 A.2d at 70.

12. Notably, the PLRB criticizes this Court's interim relief as "counter-productive to the bargaining relationship" and in derogation of

For these reasons we will vacate this Court's June 6, 2006, order. We turn, next, to the substantive issues raised by the Prison Board on appeal.

## BARGAINING TO IMPASSE

██ In its appeal of the trial court's order,[13] the Prison Board raises two alternative arguments. First, the Prison Board argues that the PLRB erred in holding that the impasse resolution procedures in Article VIII of Act 195 had to be exhausted before it could contract the food service work out of the bargaining unit. Second, assuming that Article VIII is controlling here, the Prison Board contends that the burden was upon the Union to request Article VIII mediation and/or interest arbitration because the Union created the impasse. We find no merit to either of the Prison Board's arguments.

██ Good faith bargaining requires the parties to make a serious effort to resolve differences and to reach common ground. *Morrisville School District v. Pennsylvania Labor Relations Board,* 687 A.2d 5, 8 (Pa.Cmwlth.1996). The duty to bargain in good faith extends to the subject of moving bargaining unit work to a private contractor. *Id.* Therefore, an employer must bargain to a bona fide impasse before contracting away bargaining unit work. *Id. See also Midland Borough School District v. Pennsylvania Labor Relations Board,* 126 Pa.Cmwlth. 537, 560 A.2d 303, 305 (1989) ("There has been unflagging consistency in judicial approval of the PLRB's view that unilateral removal of work from a bargaining unit and trans-

fer of that work to others for economic reasons, without collective bargaining, is an unfair labor practice.").

The Prison Board does not dispute that it was obligated to bargain to impasse before contracting with Aramark to provide the prison's food services. It is the extent of that bargaining obligation that is at issue in this case and, specifically, whether the Prison Board was required to exhaust the impasse resolution procedures set forth in Article VIII of Act 195. The Prison Board maintains that those procedures, which are codified at Sections 801 and 805 of Act 195, are not applicable in this case because contracting out work is a decision over which a public employer retains unilateral managerial control. The Prison Board contends that it would violate that managerial prerogative to delegate such a decision to a third-party arbitrator. It asserts that a public employer is required to bargain to impasse over a contracting issue and, after that point, is free to move bargaining unit work to a private entity. The Prison Board argues that it bargained in good faith to impasse with the Union and, thus, did not commit an unfair labor practice by thereafter contracting with Aramark. We disagree with the Prison Board's suggested application of Sections 801 and 805 of Act 195, which we find establish a legislative mandate.

Our interpretation of Sections 801 and 805 of Act 195 rests upon the language employed by the legislature and, in particular, its use of the word "shall." Because the word "shall" is overused, it is not examined critically before placed in a statute and, thus, can convey a diversity of

---

"the policies and purposes of [Act 195]." Supplemental Brief of Appellee, at 24, 25.

**13.** Our scope of review of PLRB cases, where the appeal is initially taken to a trial court, is the same as that of the trial court and is limited to determining whether the PLRB's

findings are supported by substantial evidence and whether the conclusions drawn therefrom are reasonable and not arbitrary, capricious or illegal. *County of Delaware v. Pennsylvania Labor Relations Board,* 735 A.2d 131, 132 n. 5 (Pa.Cmwlth.1999).

meanings. 1A Norman J. Singer, SUTHER-LAND STATUTORY CONSTRUCTION § 32A:11 (6th ed. 2002) (SUTHERLAND). These diverse meanings include those that follow:

> "shall" is imperative, is directory, means "may," expresses a *mandate, either permissive or peremptory*, applies to the past, to the future, and to the present.

*Id.* Contextually, it is apparent to this Court that "shall," as it is used in Sections 801 and 805, was intended to express a mandate. *See, e.g., Ganzer v. Erie County Tax Claim Bureau,* 163 Pa.Cmwlth. 522, 641 A.2d 1261, 1264 (1994) (noting that the word "shall" may be construed as "either directory or mandatory, depending upon the context in which it is used.").

Section 801, which governs submission of public employee labor disputes to mediation, provides as follows:

> If after a reasonable period of negotiation, a dispute or impasse exists between the representatives of the public employer and the public employes, the parties may voluntarily submit to mediation but if no agreement is reached between the parties within twenty-one days after negotiations have commenced, but in no event later than one hundred fifty days prior to the "budget submission date," and mediation has not been utilized by the parties, both parties *shall* immediately, in writing, call in the service of the Pennsylvania Bureau of Mediation.

43 P.S. § 1101.801 (emphasis added). Thus, while mediation is voluntary after an initial "reasonable period of negotiation," if the parties do not reach an agreement within the specified time frame they must enlist the services of the Pennsylvania Bureau of Mediation.

Section 805 of Act 195 imposes additional requirements for negotiating impasses between public employers and prison guards:

> Notwithstanding any other provisions of this act where representatives of units of guards at prisons ... have reached an impasse in collective bargaining and mediation *as required* in section 801 of this article has not resolved the dispute, the impasse *shall* be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties *with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.*

43 P.S. § 1101.805 (emphasis added). Section 805 states explicitly that Section 801 mediation is a requirement, leaving no doubt that "shall," as used in Section 801, conveys a mandate. Section 805 also states that where mediation is unsuccessful, the impasse "shall" be submitted to interest arbitration. Again, as it does in Section 801, "shall" conveys a mandate in Section 805, not a suggestion, and that mandate is that mediation must be followed by interest arbitration.

In this case, Union representatives first learned of the potential contract with Aramark in May 2004. Negotiations followed, primarily through correspondence before and after the parties' single meeting on August 5, 2004. By the end of September 2004, the parties were at impasse. The Prison Board continued to assert its managerial prerogative to contract the prison food services, which it believed would result in substantial savings to the County, and the Union refused to offer any counterproposals. Under Section 801, because "mediation [had] not *been* utilized by the parties," they were required to elicit the services of the Pennsylvania Bureau of Mediation no "later than one hundred fifty days prior to the 'budget submission date.'" 43 P.S. § 1101.801 (emphasis added). Section 805, which applies specifically

to units of guards at prisons,[14] provides also that where "mediation *as required* in section 801 of this article has not resolved the dispute, the impasse *shall* be submitted to a panel of arbitrators." 43 P.S. § 1101.805 (emphasis added).

The PLRB determined that the parties were required to follow these prescribed alternative dispute resolution procedures. This determination is consistent with the plain language of Sections 801 and 805 of Act 195. It is also in accord with precedent. In *Delaware County Prison Employees Independent Union v. Delaware County*, 681 A.2d 843 (Pa.Cmwlth.1996), *reversed on other grounds*, 552 Pa. 184, 713 A.2d 1135 (1998), Delaware County informed the bargaining representative of its prison guard employees that it intended to lay off all of its correctional officers and contract the work to a private corporation. The union filed a grievance under the existing collective bargaining agreement and charges of unfair labor practices against the county. Arbitration proceedings under the collective bargaining agreement culminated in a decision by an arbitrator that the county's prison privatization efforts violated the agreement. The court of common pleas granted the county's petition to vacate the arbitrator's award, finding that it did not draw its essence from the terms of the agreement, which ex-

pressly reserved in the county the right to contract work and services.

On appeal to this Court, the county argued, *inter alia*, that the decision to privatize the prison was part of "the public employer's inherent right to make fundamental political decisions regarding the level of services to be provided to the public" and, accordingly, binding interest arbitration was not required under Section 805 of Act 195. *Id.* at 850. This Court rejected the county's argument, citing to *Office of Administration v. Pennsylvania Labor Relations Board*, 528 Pa. 472, 598 A.2d 1274 (1991). We held that Section 805 is triggered when parties attempting to negotiate conditions of their collective bargaining agreement reach an impasse, and under Section 805, unresolved issues must be sent to arbitration. *Delaware County*, 681 A.2d at 850 (citing *Office of Administration*). Because Delaware County, had refused to proceed to arbitration, this Court found this refusal to be an unfair labor practice.[15] *See also Philadelphia Housing Authority v. Pennsylvania Labor Relations Board*, 153 Pa.Cmwlth. 20, 620 A.2d 594, 596 (1993) (distinguishing federal labor relations law from Pennsylvania public sector labor law in part because "the term 'impasse' [as] used in public sector law under [Act 195] . . . can *also*

14. Neither party questions whether the prison's kitchen employees were actually "prison guards" for purposes of Section 805 of Act 195. We recognize, of course, that this question would be appropriately raised during the certification process or in a petition to clarify the bargaining unit. In any event, Section 805 speaks in terms of "units" and their representatives, and the Union was duly certified as the representative of the entire bargaining unit in this case, including "correctional officers/cooks." CBA, Article 1—Recognition, ¶ A.

15. This Court's decision in Delaware County was reversed by the Supreme Court. *Dela-*

*ware County v. Delaware County Prison Employees Independent Union*, 552 Pa. 184, 713 A.2d 1135 (1998). The Supreme Court held, contrary to this Court's holding, that the arbitration award sustaining the union's grievance and directing Delaware County to cease and desist from privatizing the entire prison operation did not draw its essence from the collective bargaining agreement, which expressly permitted the county to contract out work and services. The Court in no way questioned the applicability of the Article VIII impasse resolution procedures to disputes over contracting out bargaining unit work.

mean the end of the statutory dispute resolution process, as well as deadlock," and citing Article VIII of Act 195 as illustrative) (emphasis in original).

Requiring the Prison Board and other public employers to exhaust the Article VIII impasse resolution procedures also advances sound public policy, as explained by our Supreme Court in *Office of Administration*. Prison guard employees perform an essential service in protecting the safety and welfare of the citizens of this Commonwealth. Because of the need to have prison guards on duty, the legislature has denied prison guards the right to strike. Section 1001 of Act 195, 43 P.S. § 1101.1001. The *quid pro quo* for such an arrangement is the provision of mandatory mediation and interest arbitration in Article VIII in order to expedite the resolution of collective bargaining impasses. *Office of Administration*, 528 Pa. at 481, 598 A.2d at 1278. Adopting the Prison Board's position would frustrate the legislature's intent to balance the bargaining positions of public employers and public employees who are not permitted to strike.[16]

■ Having established that the parties' bargaining obligations included the ex-

haustion of the Article VIII impasse resolution procedures, we next consider the Prison Board's alternative argument: the Union, as the party responsible for creating the impasse, should have requested mediation and/or interest arbitration. Because it did not, the Prison Board contends that it did not commit an unfair labor practice by unilaterally executing the contract with Aramark.

Section 801 directs that, in the event of an impasse and where "mediation has not been utilized by the parties, *both parties* shall immediately, in writing, call in the service of the Pennsylvania Bureau of Mediation." 43 P.S. § 1101.801 (emphasis added).[17] There is simply no language in section 801 to support the Prison Board's argument that the burden was upon the Union alone to request alternative dispute resolution. Moreover, the Union's conduct is not at issue because the Prison Board did not file unfair labor practice charges against the Union for failing to request mediation.

This Court defers to the PLRB's expertise in determining whether the conduct of an employer (or union) constitutes a refusal to bargain in good faith. *Commonwealth v. Pennsylvania Labor Relations*

16. The Prison Board, and the County Commissioners Association of Pennsylvania, as *amicus curiae*, suggest that adherence to the Article VIII impasse resolution procedures in a contracting dispute will effectively delegate an inherently managerial decision to a third-party arbitrator. These concerns are unfounded since a public employer's rights are protected by its statutory right to appeal any arbitration award. *Office of Administration*, 528 Pa. at 479, 598 A.2d at 1277. The public employer will still have a forum in which to argue that any issues in dispute, including contracting, fall within its managerial prerogative. The County Commissioners Association's reliance on this Court's recent decision in *Kleinfelter v. Commissioners of County of Dauphin*, 850 A.2d 894 (Pa.Cmwlth.2004), is also unavailing. *Kleinfelter* arose from a dis-

pute over the scope of the judiciary's statutorily protected right to supervise unionized court-appointed personnel. Wholesale contracting of bargaining unit work to a private entity is a very different concern. In any case, *Kleinfelter* was an appeal from an arbitration award that followed exhaustion of the Article VIII impasse resolution procedures. The decision in no way disavowed the applicability of those procedures in labor disputes involving Section 805 employees.

17. Section 805 of Act 195 was drafted, perhaps intentionally, in the passive voice: where an impasse exists and mediation as required in Section 801 has failed, "the impasse shall be submitted to a panel of arbitrators." 43 P.S. § 1101.805.

*Board,* 130 Pa.Cmwlth. 426, 568 A.2d 730, 733 (1990). In rejecting the Prison Board's alternative argument, the PLRB reasoned that because the Prison Board desired to disrupt the status quo by making changes to wages, hours and working conditions of some members of the bargaining unit, it had a duty to seek out its bargaining counterpart and engage in good faith negotiations without prompting or prodding from the Union. We agree with the PLRB's application of this principle, drawn from its own precedent, to the facts of this case. *See, e.g., International Association of Firefighters, Local No. 713 v. City of Easton,* 20 PA. PUB. EMP. R. (LRP) ¶ 20098 (1989) (noting that shifting the burden to union would permit a municipality to avoid its statutory obligation to bargain and make a unilateral change regarding a mandatory subject, thereby forcing the union to attempt to bargain out from under a *fait accompli* which the municipality has already chosen and implemented).

In sum, we hold that the Prison Board's duty to bargain in good faith over the issue of contracting with Aramark required the Prison Board to follow the impasse resolution procedures of Article VIII of Act 195. The Prison Board's failure to do so was an unfair labor practice, and the PLRB committed no error in charging the Prison Board under Section 1201(a)(1) and (5) of Act 195, 43 P.S. § 1101.1201(a)(1), (5). *See also* Section 803 of Act 195, 43 P.S. § 1101.803 ("refusal to submit" to mediation shall be deemed a refusal to bargain in good faith).

Accordingly, we affirm the order of the trial court affirming the final order of the PLRB in this matter.

### ORDER

AND NOW, this 29th day of November, 2006, the order of this Court dated June 6, 2006, in the above-captioned matter is VA-CATED. The order of the Court of Common Pleas, 17th Judicial District, Snyder County Branch, dated December 28, 2005, is AFFIRMED.